IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DENNIS RAY LOVETT                                          PLAINTIFF


v.                                    CIVIL NO. 16-5042


NANCY A. BERRYHILL,[1] Commissioner
Social Security Administration                             DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


Plaintiff, Dennis Ray Lovett, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed his current application for DIB on September 25, 2013,

alleging an inability to work since January 1, 2008, due to trigeminal neuralgia,[2] back

problems, and depression.  (Doc. 9, pp. 62, 135). For DIB purposes, Plaintiff maintained

insured status through March 31, 2014.  (Doc. 9, p. 142).  An administrative video hearing was

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as
Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

[2] **Error! Main Document Only.**Trigeminal neuralgia is defined as severe, episodic pain in the area supplied by the
trigeminal nerve, often precipitated by stimulation of well-defined trigger points.  See Dorland's Illustrated Medication,
Dictionary at 1262, 32nd Edition (2012).

held on October 16, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 9, pp. 25-60).

By written decision dated December 18, 2015, the ALJ found that prior to the expiration of his insured status, Plaintiff had an impairment or combination of impairments that were severe. (Doc. 9, p. 15). Specifically, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: depression, not otherwise specified; a generalized anxiety disorder; and a mild neurocognitive disorder. However, after reviewing all of the evidence presented, the ALJ determined that through the date last insured Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 9, pp. 15-16). The ALJ found that through the date last insured, Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine, repetitive tasks, involving only simple, work-related decisions, with few, if any, workplace changes, and no more than incidental contact with co-workers, supervisors and the general public.

(Doc. 9, p. 17). With the help of a vocational expert, the ALJ determined that through the date last insured, Plaintiff could perform his past relevant work as a lens matcher. (Doc. 9, p. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 29, 2016. (Doc. 9, p. 5). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.     Evidence Presented:

At the administrative hearing held on October 16, 2014, Plaintiff testified that he was fifty-seven years of age and had obtained a tenth grade education. (Doc. 9, pp. 32, 42). Plaintiff's past relevant work consists of work as a lens matcher, a dipper, and a machine repairer.  (Doc. 9, pp. 56, 182).

The pertinent medical evidence for the relevant time period of January 1, 2008, through March 31, 2014, reflects the following.  On June 25, 2013, Plaintiff entered the emergency room complaining of pain on the right side of his face for the past two weeks.  (Doc. 9, pp. 334-339).  Treatment notes indicated that Plaintiff had a history of trigeminal neuralgia but denied experiencing any problems for about four years.  Plaintiff reported he had some old medication that had expired but he had taken it anyway.  Plaintiff felt that his recent work in the heat might have exacerbated his trigeminal neuralgia.  Plaintiff reported that wind usually triggered these symptoms. Dr. Atif M. Qureshi diagnosed Plaintiff with an acute exacerbation of trigeminal neuralgia.  Plaintiff was prescribed medication and instructed to follow-up with his primary care physician.

On July 1, 2013, Plaintiff was seen for a follow-up for his facial pain. (Doc. 9, pp. 327-333). Treatment notes indicated Plaintiff was seen in the emergency room on June 25th, and was placed back on his medication for trigeminal neuralgia.  Plaintiff refused a course of steroids at that time but as the pain had continued now requested the steroid.  Dr. Robert C. Patton diagnosed Plaintiff with a trigeminal neuralgia recurrence and prescribed a steroid. Plaintiff denied experiencing depression.

3

On July 22, 2013, Plaintiff was seen for a clinic visit to re-establish care. (Doc. 9, pp. 309-326). Plaintiff was noted to have trigeminal neuralgia pain in the back of the right jaw that was controlled with carbamazine baclofen. Plaintiff also reported he had recently been given prednisone in the emergency room. Plaintiff also reported left hip pain from a dislocated hip fifteen years ago, sinus issues and allergies, a toenail fungus, an umbilical hernia, and back pain from a slipped disc for twenty-five years. Plaintiff reported that he smoked one-half of a package of cigarettes a day. Plaintiff was noted to have moderately severe depression based on his answers to a depression screen. With further questioning, Dr. Ragini L Sharma opined that Plaintiff did not have a mental health condition that required further intervention. Plaintiff denied experiencing pain on the day of the visit.

On August 16, 2013, Plaintiff complained of a bulge at the belly button. (Doc. 9, pp. 265-268). Plaintiff reported having the bulge for more than five years, but was recently told to have it fixed because it was increasing in size. Plaintiff denied experiencing obstructive symptoms. Plaintiff reported experiencing "a little bit" of localized pain when he bent over or did any Valsalva type maneuver. Plaintiff reported that he smoked a package of cigarettes a day. Upon examination, Plaintiff was noted to have a normal gait. Dr. Wayne A. Hudec noted Plaintiff's back was nontender but Plaintiff did have kyphosis. Plaintiff was diagnosed with a very large incarcerated umbilical hernia, nicotine abuse, morbid obesity, hyperlipidemia under poor control, stable depression and trigeminal neuralgia that was resolved. Plaintiff agreed to proceed with the surgical repair of the hernia. Dr. Hudec also instructed Plaintiff to stop smoking and to lose weight. On August 27, 2013, Plaintiff underwent surgical repair of an umbilical hernia. (Doc. 9, pp. 272-286, 340-349).

On September 11, 2013, Plaintiff was seen for a follow-up for his umbilical hernia repair. (Doc. 9, pp. 270-272). Plaintiff reported that he felt good. Plaintiff reported experiencing no depression. Plaintiff denied experiencing acute or chronic pain. Ms. Sidney M. Beasley, APN, noted Plaintiff's suture line was almost completely healed. Plaintiff was to continue twice daily cleanses with soap and water. Plaintiff was to refrain from lifting greater than ten pounds for another four weeks.

On November 12, 2013, Plaintiff underwent cervical, thoracic and lumbar spine x-rays that revealed no acute bony findings, and mild cervical and lumbar degenerative changes. (Doc. 9, pp. 353-358).

On February 10, 2014, Plaintiff called the clinic after taking a depression test online. (Doc. 9, pp. 498-499). Plaintiff reported he was taking antidepressant medication but thought he needed to be seen by mental health. Plaintiff was told he could walk in to the clinic or go to the emergency department. Plaintiff stated he would need to go grocery shopping first.

On February 14, 2014, Plaintiff underwent a consultative mental diagnostic evaluation performed by Dr. Terry L. Efird. (Doc. 9, pp. 362-366). Plaintiff reported he applied for disability secondary to back problems. Plaintiff also noted experiencing depression and a decreased interest in activities. Plaintiff endorsed problems concentrating and making decisions. Plaintiff also endorsed anxiety and excessive worry. Plaintiff denied either inpatient or outpatient mental health treatment but reported taking Prozac prescribed through the Veteran's Administration. Plaintiff reported that he took all medications as prescribed and denied side effects. Plaintiff's ability to perform basic self-care tasks independently was described as variable secondary to trigeminal neuralgia. Plaintiff reported the ability to

perform household chores adequately. Dr. Efird diagnosed Plaintiff with a generalized anxiety disorder and a depressive disorder. An adaptive functioning evaluation revealed that Plaintiff endorsed the ability to drive, to shop independently, to handle personal finances with cash, and to perform most activities of daily living adequately. Plaintiff reported some difficulty at times due to trigeminal neuralgia. Dr. Efird opined that Plaintiff could perform basic work like activities. Plaintiff's mental pace was noted to be a bit slow but within normal limits.

On February 19, 2014, Plaintiff was seen in the emergency department for depression and was later seen by the mental health department. (Doc. 9, pp. 477-489, 494-498). Plaintiff reported he had been taking Prozac for depression but did not think it was working. Plaintiff reported he was depressed due to his health issues and chronic pain. Plaintiff reported that he wanted to walk two miles a day but was unable to do so without experiencing foot pain. Treatment notes indicated that Plaintiff lived in the country and raised goats. Plaintiff reported raising goats was his main interest and about the only reason he left his house. Plaintiff indicated that he was afraid to go outside in the cold or wind as that seemed to trigger his trigeminal neuralgia. Plaintiff was assessed with a mood disorder due to another medical condition and an abusive childhood.

On February 19, 2014, Plaintiff was also seen by his primary care provider, Dr. Ragini L. Sharma, after he was seen in the emergency department. (Doc. 9, pp. 489-498). Plaintiff reported that he was having difficulty with depression. Plaintiff reported that he did not go out in public often and did not know how to talk to people. Plaintiff also complained of nerve pain. Dr. Sharma referred Plaintiff to the mental health clinic.

On February 20, 2014, Dr. James Fuendeling noted that he had reviewed recent notes and opined that severe depression was most likely Plaintiff's real problem. (Doc. 9, pp. 394-395). Dr. Fuendeling wanted to review the results from the mini-mental health consult, scheduled for February 24th, before making a final decision.

On February 24, 2014, Plaintiff underwent a mini-mental health consult. (Doc. 9, pp. 393-394). When Plaintiff was asked to give the date, he could give the month and year. Plaintiff was unable to recall three words. When asked to take the paper in his right hand, Plaintiff took the paper in his left hand. Dr. Fuendeling recommended an outpatient neuropsych assessment that was scheduled for April 18, 2014. (Doc. 9, p. 395).

On March 12, 2014, Plaintiff underwent a CT of the head and was noted as unremarkable. (Doc. 9, pp. 379-380).

On March 25, 2014, Plaintiff had individual therapy with Ms. Newell. (Doc. 9, pp. 462-470). Ms. Newell noted that Plaintiff's mood appeared depressed. Plaintiff reported that he grew up in an abusive home and that he was beaten daily by his parents. Plaintiff reported that he completed the tenth grade and that he had difficulty with reading and writing. Plaintiff reported Prozac controlled his depression until February of 2014, when he noticed increased depression. Plaintiff was diagnosed with major depression, recurrent, rule/out post-traumatic stress disorder.

On March 25, 2014, Plaintiff was also seen by Dr. Aparna Ghosh, a psychiatrist. (Doc. 9, pp. 466-470). Dr. Ghosh noted Plaintiff was seen in February of 2014, and was started on medication. Dr. Ghosh noted Plaintiff was feeling down, sad, and easily upset. Plaintiff reported an improvement of his depressive symptoms with his medication; however, he had

7

run out of the medication and had begun having problems again. Dr. Ghosh noted Plaintiff also had physical problems that included back pain, spurs in his spine, and trigeminal neuralgia.

After Plaintiff's insured status had expired, Plaintiff underwent a neuropsychology evaluation on April 18, 2014. (Doc. 9, pp. 395-404). Plaintiff reported memory improvement since starting a new antidepressant one month ago. Plaintiff reported that he was able to multitask some but not very much. Plaintiff indicated that he continued to have word finding difficulty that interfered with his communication. Plaintiff reported experiencing chronic pain "all over," and that he had trigeminal nerve pain that was cold sensitive and limited his activity in the winter. Plaintiff reported that as a child he was beaten frequently by his father. Dr. Fuendeling opined that Plaintiff likely had a history of developmental reading and writing disorder, though it was unclear from the interview whether Plaintiff was ever diagnosed. Plaintiff reported difficulty sleeping and frequent violent dreams that had improved with medication. Plaintiff smoked one package of cigarettes a day. Dr. Fuendeling noted that Plaintiff lived with his long-time girlfriend and their son. Plaintiff reported that he rarely left the home and that his main interest was caring for his six goats and one alpaca. After reviewing test results, Dr. Fuendeling opined that Plaintiff was of average intelligence which was consistent with his level of functioning. Dr. Fuendeling noted that Plaintiff's academic achievement was less than expected as were his reading and writing abilities. Dr. Fuendeling noted that while Plaintiff was generally functioning in the average range for most cognitive functions, he did have some weaknesses. Plaintiff was diagnosed with a mild neurocognitive disorder. Dr. Fuendeling recommended that Plaintiff be more active and engage with the external world. Plaintiff was also referred to a speech therapist and to have his sleep monitored and treated. Subsequent medical records, while not relevant to the time period in question,

8

revealed that Plaintiff's depressive symptoms improved with the use of medication and therapy.  (Doc. 9, pp. 410-413, 414, 424, 428-430, 549-550, 553-558).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c (a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§

9

423(d)(3), 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520.

**IV.     Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ erred in finding that Plaintiff's trigeminal neuralgia was resolved; and 2) whether the ALJ committed reversible error when he used his lay opinion about Plaintiff smoking while suffering from trigeminal neuralgia.

**A.     Insured Status and Relevant Time Period:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on March 31, 2014. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of January 1, 2008, his alleged onset date

of disability, through March 31, 2014, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

**B.    Plaintiff's Impairments:**

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C .F.R. § 404.1520(c).  While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted).  To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p.  The claimant has the burden of proof of showing he suffers from a medically-severe impairment at Step Two.   See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments during the time period in question, the ALJ stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one

11

"severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 \*12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

Plaintiff argues that the ALJ erred in determining that Plaintiff's trigeminal neuralgia was not a severe impairment as it was resolved. A review of the record reveals that while Plaintiff alleged that he had been unable to work since January of 2008, the medical evidence used to support his application is dated in 2013 and later. A review of the medical evidence revealed that in June of 2013, Plaintiff was seen in the emergency room for pain on the right side of his face for the past two weeks. Treatment notes indicated that Plaintiff had a history of trigeminal neuralgia but he had not experienced any problems for about four years. Plaintiff was prescribed medication and instructed to follow-up with his primary care physician. On August 16, 2013, Dr. Hudec indicated that Plaintiff's trigeminal neuralgia was resolved. (Doc. 9, p. 267). The record revealed that Plaintiff complained of pain occasionally due to his trigeminal neuralgia and reported some difficulty completing activities of daily living at times; however, the record as a whole supports the ALJ's finding that this impairment was amenable to treatment. See Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir.2004) (noting that if impairment can be controlled by treatment, it cannot be considered disabling). The Court notes that medical records dated after Plaintiff's insured status had expired revealed Plaintiff's report that he had not experienced any neuralgia lately in April of 2014, and that Plaintiff's trigeminal

neuralgia was stable on medication in July of 2014. (Doc. 9, pp. 439, 584). The Court finds

the ALJ did not commit reversible error in setting forth Plaintiff's severe impairments during

the relevant time period.

### B.    Subjective Complaints and Symptom Evaluation:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective

complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily

activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and

aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5)

functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While

an ALJ may not discount a claimant's subjective complaints solely because the medical

evidence fails to support them, an ALJ may discount those complaints where inconsistencies

appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is

that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d

at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered

and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the

record revealed that Plaintiff was able to take care of his personal needs, noting occasional

problems due to pain caused by trigeminal neuralgia; to do light household chores, including

mowing the yard in shifts; to prepare simple meals; to drive when needed; and to spend time

with his girlfriend and their son. (Doc. 9, pp. 188-199). In February of 2014, Plaintiff reported

that he was able to drive; to shop independently; to handle personal finances with cash; and to

perform most activities of daily living adequately, noting some difficulty "at times" due to his

trigeminal neuralgia. (Doc. 9, pp. 362-366). The record further revealed that after Plaintiff's

13

insured status had expired he reported that he was spending more time with his children and grandchildren going to ball games, and that he his main interest was caring for his six goats and one alpaca. (Doc. 9, pp. 401, 481).

Plaintiff argues that the ALJ improperly found a contradiction in Plaintiff's level of facial pain when he noted that Plaintiff smoked one-half to one package of cigarettes a day throughout the relevant time period. The Court notes Plaintiff testified that his trigeminal neuralgia pain was "really severe" and it felt like the inside of his mouth had hot coals in it. (Doc. 9, p. 35). Plaintiff testified that the breeze from a fan would trigger the pain in his face and at times leave him unable to brush his teeth or shave. (Doc. 9, p. 37). As smoking a cigarette would cause Plaintiff to continuously put a cigarette to his mouth, the Court does not find the ALJ's pointing out the contradiction from being unable to brush his teeth due to pain yet at the same time be able to smoke up to a package of cigarettes a day improper.

With respect to Plaintiff's mental and physical impairments, the record revealed that Plaintiff's impairments responded well to treatment during the time period in question. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998); See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he was unable to engage in any gainful activity prior to the expiration of his insured status. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.     The ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In finding Plaintiff able to perform work at all exertional levels with some non-exertional limitations, the ALJ considered Plaintiff's subjective complaints, the medical records, and the evaluations of the non-examining medical examiners.  Plaintiff's capacity to perform this level of work is supported by the fact that, with the exception of a four to six week lifting limitation after his hernia surgery, Plaintiff's examining physicians placed no restrictions on his activities that would preclude performing the RFC determined during the relevant time period. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).  The ALJ also took Plaintiff's obesity into account when determining Plaintiff's RFC. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process,

such review may be sufficient to avoid reversal). After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

### D.    Past Relevant Work:

Plaintiff has the initial burden of proving that he suffers from a medically determinable impairment which precludes the performance of past work. Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes the performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if he retains the RFC to perform:

> 1.  The actual functional demands and job duties of a particular past relevant job; or
>
> 2.  The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

The Court notes in this case the ALJ relied upon the testimony of a vocational expert, who after listening to the ALJ's proposed hypothetical question which included the limitations addressed in the RFC determination discussed above, opined that the hypothetical individual would be able to perform Plaintiff's past relevant work. See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with

a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). Accordingly, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform his past relevant work as a lens matcher during the relevant time period.

**V.     Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 31st day of May 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE